

**FILED**

**JUN 0 4 2003**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PETER CONRAD ALI<br>A39 105 177; Riverside Regional Jail,<br>1000 River Road, Hopewell, VA 23860 | ) ) ) ) ) | |
| Petitioner | ) ) ) | Case No. |
| v. | ) ) ) | Petition for a Writ of Habeas<br>Corpus |
| JOHN D. ASHCROFT, Attorney General,<br>Department of Justice, 950 Pennsylvania<br>Avenue, NW, Washington, DC 20530;<br>TOM RIDGE, Secretary, Department of<br>Homeland Security, Washington, DC 20528<br>MICHAEL GARCIA, Assistant Secretary,<br>ICE, 425 Eye Street, NW, Washington, DC<br>20536<br>MICHAEL CALTABIANO, Director,<br>Headquarters Post-Order Detention Unit,<br>801 Eye Street, NW, Washington, DC 20536;<br>and WARREN LEWIS, Director, ICE<br>4420 North Fairfax Drive, Arlington, VA<br>22203 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NUMBER 1:03CV01206<br><br>JUDGE: Royce C. Lamberth<br><br>DECK TYPE: Habeas Corpus/2255<br><br>DATE STAMP: 06/04/2003 |
| Respondents. | ) ) ) ) | |

PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241

COMES NOW the Petitioner, Peter Conrad Ali, by and through undersigned counsel who

is representing the indigent Petitioner in this court *pro bono* pursuant to LCvR 83.10, and files

the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241, to remedy his unlawful

detention by the respondents. Undersigned counsel certifies familiarity with the Local Rules of

this Court.

On August 15, 2002 the Honorable Judge Iskra of the Executive Office for Immigration

Review (EOIR) granted Deferral of Removal to Mr. Ali under the United Nations Convention

Against Torture, 8 C.F.R.§ 208.17. In December 2002, Mr. Ali requested that the Immigration

and Naturalization Service (INS) and the Department of Homeland Security (DHS), the

successor agency to the Immigration and Naturalization Service[1] review his custody status and

release him from detention. Mr. Ali was not informed of the outcome of this review. In January

2003, the attorney representing him in his custody review, James Feroli, contacted INS

deportation officer, Joe Watson. Mr. Watson did not return the phone calls. On January 28,

2003, Mr. Feroli faxed a letter to Neil Acri, Mr. Watson's superior at the detention and

deportation office, but Mr. Acri did not respond. On January 30, 2003, Mr. Feroli spoke to

Ashley Ivory regarding Mr. Ali's file. Ms. Ivory stated that the District Office did not have Mr.

Ali's file and referred Mr. Feroli to headquarters. Ms. Ivory called back a short time later and

stated that the file was in fact in the District Office. She told Mr. Feroli that the case was

scheduled for a custody review on February 23, 2003, and that once her review was complete,

she would make a recommendation to Headquarters who would ultimately make the final

decision. On February 19, 2003, Mr. Feroli spoke with an officer at the Headquarters Post-Order

Detention Unit (HQPDU). The officer informed Mr. Feroli that without proof that Mr. Ali had

made efforts to seek removal to a third country, his office would not grant a positive detention

review. On March 20, 2003 Mr. Feroli spoke with Kim Hinton at the Headquarters Post-Order

Detention Unit (HQPDU). Ms. Hinton stated that the file had been referred to the Public Health

Services for consideration. Once the Public Health Services had reviewed the case, they would

refer it to an officer at HQPDU for a recommendation. HQPDU would then make a final

---

[1] Effective March 1, 2003, functions of the former Immigration and Naturalization Service (INS) were transferred to the United States Department of Homeland Security (DHS) under the Homeland Security Act. HR 5005.

decision. (See Exhibit 1) On April 30, 2003, counsel for Petitioner, Amy Yergey, spoke to

Ashley Ivory at the Washington District Office. Ms. Ivory informed counsel that the file had

been transferred to HQPDU. Counsel then called Kim Hinton at the HQPDU who explained that

the filed is with deportation officer John Tsoukaris and that review of the file could take four to

six weeks. On May 1, 2003 Mathew Monroe with the BICE also told counsel that the file is

being reviewed by John Tsoukaris in the HQPDU, and that Mr. Ali is being scheduled for a full

psychiatric evaluation. Disregarding Petitioner's due process rights, INS and later the DHS have

not released Mr. Ali even though he has been detained beyond six months after receiving a grant

of deferral of removal and cannot be deported to Guyana at this time. Mr. Ali now seeks review

of the lawfulness of his prolonged detention, stating as follows:

## CUSTODY

1. Petitioner Peter Conrad Ali ("Mr. Ali") is in the physical custody of the Bureau of

Immigration and Customs Enforcement's Interim Director for the Washington District Office,

Warren Lewis. The determination as to whether Mr. Ali is to be released is made by Mr. Michael

Caltabiano, Director of the Headquarters Post-Order Detention Unit. He is detained at the

Riverside Regional Jail in Hopewell, Virginia. The Bureau of Immigration and Customs

Enforcement (ICE) has contracted with the Riverside Regional jail to detain immigration

detainees such as Mr. Ali. Mr. Ali is under the direct control of Respondents and their agents.

## JURISDICTION

2. This action arises under the Constitution of the United States; the Immigration and

Nationality Act (INA), 8 U.S.C. § § 1101-1537, as amended by the Illegal Immigration Reform

and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546;

and the Administrative Procedure Act ("APA"), 5 U.S. C.§ § 701-706.


3. This Court has jurisdiction under 28 U.S.C. § 2241; article I, section 9, clause 2 of the

U.S. Constitution ("Suspension Clause"); and 28 U.S.C. § 1331. Mr. Ali is presently in custody

under color of the authority of the United States, and such custody is in violation of the

Constitution, laws, or treaties of the United States. See Zadvydas v. Davis, 533 U.S. 678 (2001).

This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, and the All Writs Act,

28 U.S. C. § 1651.


## VENUE

4. Pursuant to Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493 – 500

(1973), Venue lies in the United States District Court for the District of Columbia, the judicial

district in which Attorney General John D. Ashcroft, Department of Homeland Security

Secretary, Tom Ridge, Assistant Secretary (designee) for the Bureau of Immigration and

Customs Enforcement (ICE) Michale Garcia, and Headquarters Post-Order Detention Unit

("HQPDU") Director Michael Caltabiano reside. See 28 U.S.C. § 1391(e).


## PARTIES

5. Petitioner Peter Conrad Ali is a native and citizen of Guyana. Mr. Ali was ordered

deported to Guyana on August 11, 1997. He fled back to the United States and was removed

again in 1999. After experiencing severe torture in the form of rape by government officials,

fearing for his life, he fled to the United States, and was taken into custody in May 2000 after

being charged with a criminal offense in New York. He sought protection under the United

Nations Convention Against Torture and was granted and passed a reasonable fear interview. His

case under the Convention Against Torture was referred to the Executive Office for Immigration

Review (EOIR) and On July 16, 2002 he was granted Deferral of Removal under the Convention

Against Torture, 8 C.F.R. 208.17. The Immigration and Naturalization Service did not appeal the

deferral of removal order, thereby making it final.

6. Respondent John D. Ashcroft is the Attorney General of the United States and is

responsible for the implementation of the Immigration and Nationality Act (INA) through the

Executive Office for Immigration Review (EOIR). As such, Mr. Ashcroft has the ultimate

custodial authority over Mr. Ali.

7. Respondent Tom Ridge is the Secretary of The Department of Homeland Security and

is responsible for administration of the Department of Homeland Security. Mr. Ridge has

custodial authority over Mr. Ali.

8. Respondent Michael Garcia is the Assistant Secretary (designee) for Bureau of

Immigration and Customs Enforcement (ICE). As such Mr. Garcia Mr. Garcia exercises

custodial authority over Mr. Ali.

9. Respondent Michael Caltabiano is the Director of the Headquarters Post Detention

Unit (HQPDU). The HQPDU makes the final custody decision for certain aliens like Mr. Ali,

who have not been removed after the expiration of the three month review period. See 8 C.F.R. §

241.4 (c)(2). In this capacity, Mr. Caltabiano is a legal custodian of Mr. Ali.

10. Respondent Warren Lewis is the Director of the Bureau of Immigration and Customs

Enforcement's Washington District Office and is Mr. Ali's immediate custodian. See Vasquez v.

Reno, 233 F. 3d 688, 690 (1st Cir. 2000), cert. Denied, 122 S. Ct. 43 (2001).

## **EXHAUSTION OF REMEDIES**

11. Mr. Ali has exhausted his administrative remedies to the extent required by law. The only remedy for his continued unlawful indefinite detention is by way of this judicial action.

12. In February 2003 the ICE sent Mr. Ali's file to HQPDU for review of his continued unlawful detention. To date HQPDU has not made a decision on the case despite the grant of Deferral of Removal by the INS and the fact that Mr. Ali's detention has continued beyond six months in contradiction of the ruling under Zadvydas v. Davis, 533 U.S. 678 (2001). There is no appeal to the Board of Immigration Appeals (BIA). No other administrative procedures exist for an alien indefinitely detained to petition for release.

## **STATEMENT OF FACTS**

13. Mr. Ali was born in Guyana on December 23, 1965. He first entered the country in 1980 when he was sixteen years old and lived with his mother and father in Queens, New York. In 1985 Mr. Ali became a legal permanent resident.

14. Mr. Ali's mother is a United States citizen and lives in New York. His stepfather is also a United States citizen and lives in New York as well. His three sisters are United States Citizens two sisters reside in New York and one resides in Texas. They are all United States citizens. Mr. Ali's father passed away in 1998.

15. Prior to arriving in the United States, Mr. has resided in no country other than Guyana.

16. Between 1986 and 1991, Mr. Ali received approximately six misdemeanor charges against him including criminal mischief and possession of stolen property. Most of the charges were dismissed and he did not receive any jail time. In 1993, Mr. Ali was convicted of criminal possession of stolen property and reckless endangerment in violation of § 165.45 and § 120.25, respectively, of the New York Penal Law. He was sentenced to one-and-a-half to four-and-a-half years imprisonment for the reckless endangerment charge. He served a sentence of approximately three years. He was not sentenced to imprisonment for the stolen property charge. Subsequently, the Immigration and Naturalization Service deported him to Guyana on August 11, 1997 under former INA §241(a)(2)(A)(ii) as an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.

17. Upon his arrival in Guyana Mr. Ali was arrested by Guyanese immigration officials and brutally raped. He fled back to the United States in 1997 and was arrested for stolen property. Mr. Ali spent one year in jail in New York. In 1999 he was detained by INS. The Immigration and Naturalization Service reinstated his prior order of deportation from 1997 and he was deported in 1999. Shortly after arriving in Guyana, and fearing for his life he fled to the United States again.

18. In May 2000, Mr. Ali was convicted of criminal mischief and served sixty days in jail. He was then taken into INS custody. On July 16, 2002, he was granted Deferral of Removal under the Convention Against Torture 8 C.F.R. § 208.17 by the Honorable Judge Iskra of the Executive Office for Immigration Review (EOIR). The INS and later the DHS have been unable to remove Mr. Ali to Guyana.

19. In November 2002, Mr. James Feroli, the attorney representing Mr. Ali in his custody review requested that the Immigration and Naturalization Service and its successor agency the

Department of Homeland Security review Mr. Ali's custody status and release him from

detention. Neither Mr. Ali nor James Feroli, were informed in writing of the outcome of this

review. In February 2003, Mr. Ali's attorney was informed verbally by a detention officer at the

district office that the district office had made a recommendation to refer the matter to

Headquarters Post Detention Unit. In April 2003, counsel, Amy Yergey, was informed that the

file is with HQPDU. Neither Mr. Ali,  Mr. Feroli, nor Amy Yergey have received notice of the

status of the custody review, contradicting 8 CFR § 241.4 (c)(4)(d). (A copy of any decision by

the district director, Director of Detention and Removal Field Office, or Executive Associate

Commissioner to release or detain an alien shall be provided to the detained alien.)

## CLAIMS FOR RELIEF

### COUNT ONE
### STATUTORY VIOLATION

20. Mr. Ali re-alleges and incorporates by reference paragraphs 1 through 19 above.

21. Mr. Ali's continued detention by Respondents violates INA § 241(a) (6), as amended,

8 U.S.C. § 1231 (a)(6), as interpreted by the U.S. Supreme Court in Zadvydas. The six-month

presumptively reasonable period of detention to allow for removal efforts lapsed on January 16,

2003. Because Mr. Ali has been granted Deferral of Removal it is extremely unlikely that

Respondents will be able to remove Mr. Ali to Guyana in the reasonably foreseeable future.

According to 8 C.F.R. 208.17(d)(1), deferral of removal may be terminated if the INS District

Counsel for the District with jurisdiction over the alien files a motion to schedule a hearing to

determine whether deferral should be terminated. The District Counsel has not begun termination

proceedings. Country Conditions in Guyana have not changed since Mr. Ali was forcibly raped

8

upon his return to Guyana, making it unlikely for the District Counsel to succeed in a motion to terminate the deferral of removal.

22. Neither the INS and its successor agency the DHS has identified another country to which Mr. Ali can likely be deported. The U.S. Supreme Court held in <u>Zadvydas</u> that the continued indefinite detention of an alien in Mr. Ali's circumstances is not authorized by § 241 (a) (6), <u>as amended</u>, 8 U.S.C. § 1231 (a)(6). <u>See Zadvydas</u>, 533 U.S. at 689, 699.

### COUNT TWO

### SUBSTANTIVE DUE PROCESS VIOLATION

23. Mr. Ali re-alleges and incorporates by reference paragraphs 1 through 22 above.

24. Mr. Ali's continued indefinite detention violates his right to substantive due process by depriving him of his fundamental liberty interest. The U.S. Supreme Court recognized in <u>Zadvydas</u> that aliens in Mr. Ali's circumstances, who are admitted to the United States and placed into custody yet not able to be removed to their countries of origin are protected by the Due Process Clause. <u>Id</u> at 690-95. They may only be detained for a period of time reasonably necessary to secure their removal.

25. <u>Zadvydas</u> established a six-month presumptively reasonable period of detention. In Mr. Ali's case, the six-month period expired January 16, 2003.

## COUNT THREE
## PROCEDURAL DUE PROCESS VIOLATION

26. Petitioner re-alleges and incorporates by reference paragraphs 1 through 25 above.

27. Under the Due Process Clause of the U.S. Constitution, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. In November 2002, Mr. Ali requested a review of his custody status. To date, the INS and its successor, the DHS has not advised Mr. Ali of the status of the review, other than to notify his attorney that the file was transferred to HQPDU, and that the file was referred to Public Health Services for review. The review is taking well beyond the presumptively reasonable six months established by Zadvydas. Mr. Ali has not been given the opportunity for a meaningful review of his custody status. There is no administrative mechanism in place for Petitioner to demand notification of the outcome of his custody review, to be informed of the reason for his continued detention, or to appeal a custody decision that contravenes Zadvydas.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that his Court grant the following relief:

1.) Assume jurisdiction over this matter;

2.) Grant Peititoner a writ of habeas corpus directing Respondents to release Petitioner from custody forthwith;

3.) Order Respondents to refrain from transferring Petitioner out of the jurisdiction of the ICE Washington Interim District Director, Warren Lewis, during the pendency of the proceedings and while the Petitioner remains in Respondents' custody;

4.) Grant any other and further relief which this Court deems just and proper.

Respectfully Submitted,

Catholic Charities Immigration Legal Services

By: _____

Amy Yergey, Attorney At Law
11160 Veirs Mill Rd. #700
Wheaton, MD 20902
301-942-1856 ext. 111 (phone)
301-942-3924 (fax)

Dated June ___4___ 2003

11.

VERIFICATION

I, Peter Ali, hereby declare under penalty of perjury that to the best of my knowledge and belief

the matters set forth in the foregoing Petition For A Writ Of Habeas Corpus Pursuant To 28

U.S.C. § 2241 are true and correct.

_Peter Ali_

PETER ALI

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER CONRAD ALI<br>A39 105 177; Riverside Regional Jail,<br>1000 River Road, Hopewell, VA 23860<br><br>          Petitioner<br><br>        v.<br><br>JOHN D. ASHCROFT, Attorney General,<br>Department of Justice, 950 Pennsylvania<br>Avenue, NW, Washington, DC 20530;<br>TOM RIDGE, Secretary, Department of<br>Homeland Security, Washington, DC 20528<br>MICHAEL GARCIA, Assistant Secretary,<br>ICE, 425 Eye Street, NW, Washington, DC<br>20536<br>MICHAEL CALTABIANO, Director,<br>Headquarters Post-Order Detention Unit,<br>801 Eye Street, NW, Washington, DC 20536;)<br>and WARREN LEWIS, Director, ICE<br>4420 North Fairfax Drive, Arlington, VA<br>22203<br><br>         Respondents. | Case No.<br><br>Petition for a Writ of Habeas<br>Corpus |

PETITIONER PETER CONRAD ALI'S MEMORANDUM OF LAW IN
SUPPORT OF PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. §2241

03 1206

Petitioner Peter Conrad Ali, by and through undersigned counsel, submits this brief in

support of his release from unlawful indefinite detention by the Department of Homeland

Security (DHS) and formerly the Immigration and Naturalization Service (INS). On July 16,

**FILED**

JUN 0 4 2003



2002 Mr. Ali was granted Deferral of Removal under the Convention Against Torture under 8

C.F.R. § 208.17. In December 2002, Mr. Ali requested a review of his custody determination.

Disregarding Petitioner's due process rights, INS and DHS have not decided the outcome of the

review even though he cannot be deported to Guyana at this time because he was granted

deferral of removal. Mr. Ali's detention by the Respondents violates substantives and procedural

due process and contravenes the Immigration and Nationality Act (INA). Mr. Ali now seeks

review of the lawfulness of his prolonged detention.

## STATEMENT OF ATTORNEY REPRESENTING INDIGENT

Counsel for Petitioner certifies by signature that pursuant to LCvR 83.10 the Petitioner is

indigent and being represented *pro bono* by counsel. Counsel for the Petitioner is licensed to

practice law in Maryland Court of Appeals, the highest court of Maryland. Counsel has read and

is familiar with the Local Rules of this Court.

## STATEMENT OF FACTS

Petitioner Peter Conrad Ali is a native and citizen of Guyana. Mr. Ali was ordered

deported to Guyana under former INA §241 (a)(2)(A)(ii) as an alien convicted of two crimes

involving moral turpitude not arising out of a single scheme of criminal misconduct.

He fled back to the United States and was removed again in 1999. Fearing for his life, he

returned to the United States, and was taken into custody in the summer of 2000, and has

remained in custody continuously since that date. On July 16, 2002 he was granted Deferral of

Removal under the Convention Against Torture under 8 C.F.R.§ 208.17. The Immigration and

Naturalization Service did not appeal the deferral of removal order, thereby making it final. In

2

December 2002, Mr. Ali requested that the INS review his custody status. In January 2003, the

attorney representing him in his custody review, James Feroli, contacted INS deportation officer,

Joe Watson regarding the custody interview. Mr. Watson did not return the phone calls. On

January 28, 2003, Mr. Feroli faxed a letter to Neil Acri, Mr. Watson's superior at the detention

and deportation office, but Mr. Acri did not respond. On January 30, 2003, Mr. Feroli spoke to

Ashley Ivory regarding Mr. Ali's file. Ms. Ivory stated that the District Office did not have Mr.

Ali's file and referred Mr. Feroli to Headquarters Post-Order Detention Unit. Ms. Ivory called

back a short time later and stated that the file was in fact in the District Office (HQPDU). She

told Mr. Feroli that the case was scheduled for a custody review on February 23, 2003, and that

once her review was complete, she would make a recommendation to Headquarters, the office

that would ultimately make the final decision. On March 20, 2003 Mr. Feroli spoke with Kim

Hinton at the Headquarters Post-Order Detention Unit. Ms. Hinton stated that the file had been

referred to the Public Health Services for consideration. Once the Public Health Services had

reviewed the case, they would refer it to an officer at HQPDU for a recommendation. HQPDU

would then make a final decision. (See Exhibit 1) On April 30, 2003, counsel for Petitioner, Amy

Yergey, spoke to Ashley Ivory at the Washington District Office. Ms. Ivory informed counsel

that the file had been transferred to HQPDU. Counsel then called Kim Hinton at the HQPDU

who explained that the filed is with deportation officer John Tsoukaris and that review of the file

could take four to six weeks. On May 1, 2003 Mathew Monroe with the BICE also told counsel

that the file is being reviewed by John Tsoukaris in the HQPDU, and that Mr. Ali is being

scheduled for a full psychiatric evaluation.

Mr. Ali has filed a Freedom of Act (FOIA) request to obtain a copy of immigration file

with the District Office and the HQPDU to ascertain the status of his custody review.

In order for Mr. Ali to be removed to Guyana, deferral of removal must be terminated. This occurs when the INS District Counsel for the District with jurisdiction over the alien files a motion to schedule a hearing to determine whether deferral whether deferral should be terminated 8 C.F.R. 208.17(d)(1). The District Counsel has not begun termination proceedings and country conditions in Guyana have not changed since Mr. Ali was forcibly raped upon his return to Guyana, making it unlikely for the District Counsel to succeed in a motion to terminate the deferral of removal. It is therefore unlikely that Mr. Ali will be removed in the reasonably foreseeable future.

## ARGUMENT

### I.

### THIS COURT HAS JURISDICTION TO GRANT MR. PETER CONRAD ALI THE REQUESTED RELIEF

The Court has jurisdiction under 28 U.S.C. § 2241 to hear this habeas action and to grant Mr. Ali the relief he has requested. The U.S. Supreme Court held in Zadvydas v. Davis, 533 U.S. 678 (2001), that § 2241 confers jurisdiction on the federal courts to consider challenges to the constitutionality of an alien's indefinite detention in the post-removal period. Zadvydas, 533 U.S. at 687-88. Nothing in the 1996 amendments to the INA by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) or the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) alters the availability of habeas corpus proceedings for an alien to obtain review of his continued custody after an order of removal becomes final. Id.

No exhaustion of administrative remedies requirement applies to this action challenging Mr. Ali's indefinite detention. Neither the INA nor its implementing regulations require that

4

administrative remedies be exhausted before bringing an action challenging the constitutionality of an alien's detention. See, e.g., Hoang v. Comfort, 282 F.3d 1247, 1254-55 (10th Cir. 2002) (under immigration laws, exhaustion only required for appeals of final order of removal, not for challenges to detention); Welch v. Reno, 101 F. Supp.2d 347, 351-52 (D. Md. 2000) (no exhaustion requirement for challenge to detention); Duong v. Immigration and Naturalization Service, 118 F. Supp.2d 1059, 1063-65 (S.D. Cal. 2000) (no exhaustion requirement where alien challenging constitutionality of detention); Hermanowski v. Farquharson, 39 F.Supp.2d 148, 153-54 (D.R.I. 1999) (same). Further, the regulations explicity provide no right to appeal a decision to continue to detain an alien. See 8 C.F.R. § 241.4(d). Accordingly, this Court has authority to hear this action.

## II.

## STANDARD OF REVIEW

The U.S. Supreme Court has instructed that courts reviewing habeas petitions like this one to ask "whether the detention in question exceeds a period reasonably necessary to secure removal." Zadvydas, 533 U.S. at 699. Reasonableness, according to the Zadvydas Court, is measured primarily in terms of the statute's basic purpose of assuring the alien's presence at the moment of removal. Id. Six months is the presumptively reasonable period of time for the INS to accomplish all foreseeable removals. Id. at 701. After the six month period, if an alien comes forward with "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must provide "evidence sufficient to rebut that showing" or else the alien should be released. Id.

## III.

**RESPONDENTS' INDEFINITE DETENTION OF MR. ALI VIOLATES
FEDERAL LAW AND MR. ALI'S RIGHTS TO SUBSTANTIVE DUE
PROCESS UNDER THE CONSTITUTION**

The Respondents' continued detention of Mr. Ali violates federal law and the substantive due

process clause of the U.S. Constitution. Especially in light of the Supreme Court's clear holding

in Zadvydas, the INS's failure to release Mr. Ali is inexcusable.

**A. Respondents' Indefinite Detention of Mr. Ali is Not Authorized By 8 U.S.C. § 1231(a)(6)
or Any Other Law**

Respondents' continued detention of Mr. Ali is unlawful in that it exceeds the INS's

authority to detain him in order to accomplish his removal from the United States. The INS lacks

authority under the immigration laws, in particular INA § 241 (a)(6), 8 U.S.C. § 1231 (a)(6), to

detain Mr. Ali, who was granted deferral of removal, for more than six months unless it

established that there is a significant likelihood of carrying out his removal in the reasonably

foreseeable future. See Zadvydas, 533 U.S. at 699, 701.

The INS's post-removal-order detention of Mr. Ali is governed by the INA and its

implementing regulations. Thereunder, after entry of a final order of removal and during the 90-

day removal period, an alien must be held in custody. 8 U.S.C § 1231 (a)(2). If the alien has not

been removed within the 90-day removal period, the regulations require that the INS District

Director conduct a review to determine whether to continue custody or to release the alien under

supervision. 8 C.F.R. § 241.4 (c)(1), (h) (k)(1)(I). Three months after the 90-day removal period

or soon thereafter, if the alien still has not been removed and remains in detention, the

Headquarters Post-Order Detention Unit (HQPDU) must conduct a further review. Id.,

6

§241.4(k)(2)(ii). If a decision is made to keep the alien in custody, and the INS continues to be unable to remove that alien, the regulations provide for yearly reviews by HQPDU. Id., § 241.4(k)(2)(iii).

In Zadvydas, the U.S. Supreme Court imposed a significant limitation on the Respondent's authority to detain aliens in the post-removal-order period. The Court recognized a presumptively reasonable period of detention of only six months. Zadvydas, 533 U.S. at 701. Before Zadvydas, the INS had interpreted § 1231(a)(6) to permit the detention of aliens indefinitely, even where it took the INS years to carry out their removal or where it was impossible to remove them. See id. at 688-89. The Supreme Court, however, held that § 1231(a)(6) did not permit indefinite detention, because to construe the statute otherwise would raise substantial issues under the Fifth Amendment's Due Process Clause. Id. at 690.

After issuing its opinion, the Supreme Court remanded Zadvydas to the Fifth Circuit. On remand, the Fifth Circuit ordered petitioner Zadvydas released from INS custody, noting that at the time the district court had ordered Zadvydas released, he had been in custody for "several months in excess of three years after the expiration of the removal period." Zadvydas v. Davis, 258 F.3d 398, 404 (5th Cir. 2002) (hereafter Zadvydas II). The circuit court held that the district court's judgment ordering Zadvydas released had been correct. See id.

Mr. Ali remains in detention more than six months beyond the presumptively reasonable period to remove an alien. His removable does not appear to be likely in the reasonably foreseeable future. The INS District Counsel having jurisdiction over the alien has not filed a motion to schedule a hearing to determine whether deferral should be terminated as required by 8 C.F.R. 208. 17(d)(1). Moreover, according to the U.S. Department of State's most recent

7

Country Reports on Human Rights Practices – 2002, police abuses against suspects in detention continues.[1]

In a recent case, a United States district court ordered a Nigerian detainee released from INS detention where he had been in post-removal-order custody for eleven months. Okwilagwe v. Immigration & Naturalization Service, No. 3-01-CV-1416-BD, 2002 WL 356758, *3 (N.D. Tex. Mar. 1, 2002). The district court found that because the INS did not have travel documents in hand and there was no certainty as to when such documents might be issued, the Government failed to sustain its burden of demonstrating that the petitioner's removal would occur in the reasonably foreseeable future. See id. at *2-3. It concluded that once the presumptively reasonable removal period expired, Zadvydas did not permit the INS to continue to detain an alien where there was no way to determine when travel documents might be issued. Id. at *3 ("[P]etitioner remains in custody today and, if left up to the INS, will remain there until such time, if any, as the Nigerian government issues travel documents to effect his removal. Such a result would be contrary to Zadvydas.").

In the District Court for the District of Columbia, the court found that Zadvydas applied where a Liberian man had been detained for 42 months beyond the final order of deportation Seretse-Khama v. Ashcroft 215 F.Supp.2d 37 (D.C. 2002). It was not persuaded by the Respondents' arguments that Petitioner had failed to cooperate and that deportation to Liberia is forthcoming, and concluded that the balance of harms weighs in favor of petitioner's release.

---

[1] Country Reports on Human Rights Practices – 2002, Released by the Bureau of Democracy, Human Rights, and Labor March 31, 2003 pg. 3

**B. In Subjecting Mr. Ali To Indefinite Detention, respondents Are Violating His Rights To Substantive Due Process Under The U.S. Constitution**

Mr. Ali's continuous detention violates the Due Process Clause of the U.S. Constitution. In Zadvydas, the Supreme Court was clear that the INS's practice of indefinitely detaining aliens whose deportations cannot be effectuated within a reasonable period of time could violate the Due Process Clause. An alien may not be detained indefintely – as Mr. Ali has – while the INS undertakes efforts to deport him. Zadvydas, 533 U.S. at 688-96 (§ 1231 (a)(6) "does not permit indefinite detention. A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

In Zadvydas, the Supreme Court acknowledge that while it may not be possible to accomplish all reasonably foreseeable removals within the 90-day that "Congress previously doubted the constitutionality of detention for more than six months." Id. at 701. The Court held that continued detention beyond this period would raise a substantial constitutional question regarding the alien's Fifth Amendment right to Due Process, as well as the alien's fundamental liberty interest. Id. at 690-94.

The indefinite detention of Mr. Ali also is excessive in relation to the permissible government interest in removing him. (See United States v. Salerno, 481 U.S. 739, 747-48 (1987) detention for a regulatory purpose cannot be excessive in relation to the government interest.) Zadvydas concluded that the Government's principal interest in detaining aliens subject to a final order of removal is "assuring the alien's presence at the moment of removal." 533 U.S. at 699. This regulatory interest, however, loses its validity where the alien's removal is not reasonably foreseeable. See id. At 699-700. At the other end of the balance lies Mr. Ali's fundamental liberty interest, which the INS has deprived the Petitioner of pending his removal.

9

"Freedom from imprisonment – from government custody, detention, or other forms of physical

restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Id. at 690 (citing

Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). Far less extreme measures for assuring Mr. Ali's

presence at the time of removal are available, such as supervised release. See id. at 699; see also

8 C.F.R. § 241.5. In light of these circumstances, Mr. Ali's prolonged detention, with no

ascertainable end in sight, is clearly excessive and violates the Due Process Clause of the Fifth

Amendment. See Zadvydas, 533 U.S. at 690.

## IV.

## PROCEDURAL DUE PROCESS

Respondents have also violated Mr. Ali's rights to procedural due process in failing to notify

him of the outcome of his custody reviews, and to provide him with reasons for his continued

detention, and by failing to provide an administrative mechanism for aliens to appeal a custody

decision that contravenes Zadvydas. Procedural due process requires that government action

depriving a person of life, liberty or property be implemented in a fair manner. See United States

v. Salerno, 481 U.S. 739, 746 (1987). The assessment of whether the process provided is

constitutionally sufficient takes into account "the interest at stake for the individual, the risk of

an erroneous deprivation of the interest through the procedures used as well as the probable

value of additional or different procedural safeguards, and the interest of the government in using

the current procedures." Landon v. Plasencia, 459 U.S. 21, 34 (1982) (citing Mathews v.

Eldridge, 424 U.S. 319, 334-35 (1976)).

Current procedures require that individuals with final orders receive an initial custody review

within 90 days of their order of deportation becoming final. 8 C.F.R. § 241.4(g), (h). Thereafter,

INS must review a detainee's custody status once a year. Id., § 241.4(k). The review takes place within the agency, not before an Immigration Judge. After both the initial custody review and the periodic reviews thereafter, the regulations require that the INS notify the alien in writing of the outcome of the review and, if the decision is to continue custody, the reasons therefore. Id., §241.4(d), (h)(4). No mechanisms exists for an alien to administratively appeal a decision to continue custody.

The custody review procedures are constitutionally insufficient both as written and as applied. Here, the individual interest at stake – the fundamental right to freedom – is of the highest order. The government's interest in accomplishing the removal of aliens, on the other hand, although weighty, "becomes less compelling as the probability of deportation decreases." Phan v. Reno, 56 F. Supp.2d 1149, 1157 (W.D. Wash. 1999). Concerning the final factor in the procedural due process analysis, a number of courts have identified a substantial bias within the INS toward the continued detention of aliens, thereby raising the risk of erroneous deprivation to unconstitutionally high levels. See id. ("We have similar concerns about the quality of the review afforded by the INS to the petitioners. Indeed, our review of the record confirms that the INS does not meaningfully and impartially review the petitioners' custody status."); see also St. John v. McElroy, 917 F. Supp. 243, 251 (S.D.N.Y. 1996) ("Due to political and community pressure, the INS, an executive agency has every incentive to continue to detain aliens with aggravated felony convictions, even though they have served their sentences, on the suspicion that they may continue to pose a danger to the community."); Cruz-Taveras v. McElroy, No. 96 CIV.5068 (MBM), 1996 WL 455012, *6-7 (S.D.N.Y. Aug 13, 1996) (expressing "little confidence" in release determinations by INS district directors).

11

In Phan, the court held that as a constitutional minimum, an alien indefinitely held in post-removal-order detention is entitled to a fair and impartial hearing before an immigration judge where he or she can present evidence to support release pending deportation, and with a right to appeal an adverse decision to the BIA. "The risk of erroneous deprivation of a petitioner's liberty interest is too great to deny him or her anything less than the full procedural protections available under the Constitution." Phan, 56 F. Supp.2d at 1157-58. A number of other courts have adopted this sound position. See, e.g., Duong, 118 F. Supp.2d at 1067-68; Vo, 63 F. Supp.2d 1278. Thus, given the highest protections due Petitioner's fundamental liberty interest, a decision making procedure that begins and ends with the agency itself engenders too great a risk of an erroneous deprivation. Because the custody review scheme fails to provide a meaningful and impartial review of an alien's status, it does not satisfy the strictures of procedural due process and is therefore unconstitutional.

Further, Respondents have violated Mr. Ali's due process rights by failing to abide by their own regulations. Petitioner has not received notice of the custody determination 8 C.F.R. § 241.4 (c)(4)(d). (A copy of any custody decision by the district director, Director of Detention and Removal Field Office, or Executive Associate Commissioner to release or detain an alien shall be provided to the detained alien.)

## V.

## MR. ALI SHOULD BE ORDERED RELEASED DURING THE PENDENCY OF THE HABEAS PROCEEDINGS

Because of the substantial likelihood of prevailing on the merits and the substantial due process rights at issue in this action, the Court should exercise its authority to order Mr. Ali

released during the pendency of these proceedings. See Baker v. Sard, 420 F.2d 1342, 1343

(D.C. Cir. 1969) ("When an action pending in a United States court seeks release from what

is claimed to be illegal detention, the court's jurisdiction to order release as a final disposition

of the action includes an inherent power to grant relief pendent lite, to grant bail or release,

pending determination of the merits.") This is especially true here where Mr. Ali's family is

in the community and depends on him for support.


### CONCLUSION

Wherefore, for the above stated reasons, Petitioner respectfully requests this Court

to order his immediate release and to enjoin Respondents from any further detention of him.


Respectfully submitted,
Catholic Charities Immigration Legal Services


By: _____

Amy Yergey
11160 Veirs Mill Road, Suite 700
Wheaton, MD 20902
(301) 942-1856 (phone)
(301) 942-3924 (fax)


Dated June _4_ 2003

13

## CERTIFICATE OF SERVICE

I hereby certify that on June ___4___ 2003, a copy of the foregoing Petition For a Writ Of Habeas

Corpus Pursuant to 28 U.S.C. § 2241, Petitioner Peter Conrad Ali's Memorandum of Law In

Support Of Petition For a Writ Of Habeas Corpus Pursuant to 28 U.S.C. §2241 were sent by first

class mail return receipt requested to:

JOHN D. ASHCROFT
Attorney General
United States Department of Justice
950 Pennsylvania Avenue, NW,
Washington, DC 20530

TOM RIDGE
Secretary
Department of Homeland Security
Washington, DC 20528

MICHAEL GARCIA
Assistant Secretary
Bureau of Immigration and Customs Enforcement
425 Eye Street, NW, Washington, DC 20536

MICHAEL CALTABIANO
Director
Headquarters Post-Order Detention Unit
801 Eye Street, NW
Washington, DC 20536

WARREN LEWIS
Director
Bureau of Immigration and Customs Enforcement
4420 North Fairfax Drive
Arlington, VA 22203

U.S. Attorney for the District of Columbia
555 4th Street, NW
Washington, DC 20530

_____
Amy Yergey

# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PETER CONRAD ALI<br>A39 105 177; Riverside Regional Jail,<br>1000 River Road, Hopewell, VA 23860 | ) ) ) ) | |
| Petitioner | ) ) | Case No. |
| v. | ) ) ) | Petition for a Writ of Habeas<br>Corpus |
| JOHN D. ASHCROFT, Attorney General,<br>Department of Justice, 950 Pennsylvania<br>Avenue, NW, Washington, DC 20530;<br>TOM RIDGE, Secretary, Department of<br>Homeland Security, Washington, DC 20528<br>MICHAEL GARCIA, Assistant Secretary,<br>ICE, 425 Eye Street, NW, Washington, DC<br>20536<br>MICHAEL CALTABIANO, Director,<br>Headquarters Post-Order Detention Unit,<br>801 Eye Street, NW, Washington, DC 20536;<br>and WARREN LEWIS, Director, ICE<br>4420 North Fairfax Drive, Arlington, VA<br>22203 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) ) | |

## AFFIDAVIT IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

I, James Feroli, state that I am an attorney licensed in the State of Maryland in

good standing. I served as counsel for Mr. Peter Ali in the process of his post custody

detention review and affirm the following:

03 1206



FILED

JUN 0 4 2003

1.) On December 4, 2002, I mailed a letter first class postage paid to Headquarters

Post Detention Unit, U.S. Immigration and Naturalization Service, 801 I Street,

NW, Suite 800, Washington, DC 20536 providing information in support of Mr.

Ali's custody review. A copy of this letter was sent by fax to Joe Watson at the

INS District Office.

2.) During the second half of January 2003, I attempted to contact Immigration and

Naturalization Service[1] deportation officer Joe Watson at (202) 307-1554 in order

to determine the status of Mr. Ali's case. I left several messages on Mr. Watson's

voice mail service. Mr. Watson did not return my phone calls.

3.) On January 28, 2003, I faxed a letter to Neil Acri, Mr. Watson's superior at the

detention and deportation office, via fax number (202) 307-1598. I enquired

about the status of Mr. Ali's detention review and arrangements to attend. Mr.

Acri did not respond to my letter.

4.) On January 30, 2003, I spoke by telephone with INS officer Ashley Ivory at the

INS District Office. At first, Ms. Ivory stated that the District Office did not have

custody of Mr. Ali's file and referred me to the Headquarters Post Detention

Review Unit office. Ms. Ivory called back shortly afterward and said that the file

was in fact in the custody of the District Office. Ms. Ivory stated that Mr. Ali's

case was scheduled for a custody review on February 23, 2003. Ms. Ivory said

that the review she would be doing would be a file review, not involving Mr.

Ali's personal appearance. She said that after her review she would make a

recommendation to Headquarters that would make the final decision. She also

---

[1] The Immigration and Naturalization Service has been reorganized into the Department of Homeland Security for the sake of simplicity will be referred to as INS.

said that she would be referring Mr. Ali's case to Public Health Services for a psychological exam. I asked Ms. Ivory for the number for Public Health Services. She said she could not provide it.

5.) On February 19, 2003, I spoke by telephone with an officer in the Headquarters, Post Detention Review Unit and enquired about the status of Mr. Ali's case and about the process once his case is referred to that office. I informed the officer that Mr. Ali had been granted deferral of removal. The officer asked if Mr. Ali had applied to countries other than his country of nationality for removal. He stated that there were 197 other countries to which Mr. Ali could apply for removal. He said that without proof that Mr. Ali had made significant efforts to seek removal to a third country, his office would not grant Mr. Ali a positive detention review.

6.) On March 20, 2003, I spoke by telephone with Ms. Kim Hinton, phone number (202) 616-0125, at the Headquarters, Post Detention Review Unit. Ms. Hinton said that Mr. Ali's case had been referred to Public Health Services for consideration. She said that after Public Health Services had reviewed the case they would refer it to an officer at the Headquarters office for a recommendation and then they would issue a final decision. I asked Ms. Hinton for a time line for the Public Health Services review and a final decision in the case, she could not provide one. I asked Ms. Hinton for the phone number for Public Health Services, she could not provide the number. Ms. Hinton said to call back in one month and maybe then she could provide some information as to Mr. Ali's case.

I declare under the penalty of perjury that my foregoing statement is true and correct

to the best of my knowledge and belief.

So sworn,                                Date sworn and signed,


_James Feroli_
James Feroli, Esquire

_May 30, 2003_
Date

## AJOY K. SINHA, M.D.
*Orthopaedic Surgery*
*Arthritis & Joint Replacement Surgery*

57-23 141 Street, Flushing, New York 11355
Phone: (718) 661-2222 • Fax: (718) 661-3747

May 16, 2003

To Whom It May Concern:

This is to state that I am Marjorie Arniotis' Orthopedic Surgeon. Marjorie is a seventy year old woman who is ill and needs assistance at home. Marjorie suffers from a broken ankle and a knee replacement in the past and is soon to undergo left shoulder surgery in May. She lives everyday with great pain and is unable to afford to pay for the care she needs to help her with her daily routine. Marjorie tells us that her son Peter is her only help at home and that Peter is incarcerated for an immigration violation. I strongly recommend releasing Peter to assist his mother at home if possible. Thank you for your time and consideration.

Sincerely,

Ajoy K. Sinha, MD

03 1206

FILED

JUN 0 4 2003



Affiliation: New York Hospital Medical Center of Queens, Flushing • North Shore Hospital at Forest Hills • Flushing Medical Center, Flushing